# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

DOUGLAS MILBOURNE and
ORQUIDEA MILBOURNE,

     Appellants,

     v.

DERRICK SWINTON,

     Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. CPU4-21-003798

Submitted: September 30, 2024
Decided: December 2, 2024

Douglas Milbourne
Orquidea Milbourne
400 Old South Chapel St.
Newark, DE 19713
*Self-represented Appellants*

Derrick Swinton
2 Thomas Court
Apt. 208
Union, NJ 07083
*Self-represented Appellee*

## DECISION AFTER TRIAL

**SURLES, J.**

Appellants Douglas Milbourne ("Tenant") and his wife, Orquidea Milbourne (collectively, "Tenants"), bring this appeal from a decision of the Justice of the Peace Court ("JP Court") to recover $10,500 for their security deposit and labor costs associated with cleaning the kitchen of the home they rented from Appellee Derrick Swinton ("Landlord"). Landlord counterclaims for unpaid rent and costs of minor cosmetic work and repairs totaling $7,235. On May 23, 2024, upon motion of Landlord, default judgment was entered as to Ms. Milbourne, with damages to be proven on the day of trial.[1]

The nature of the proceedings in the JP Court rendered the pleadings in this case inherently askew,[2] and the precise nature of each parties' claims was further muddled by the *pro se* parties lack of understanding of the Court's rules. The Court, in its discretion, afforded considerable leeway to ensure each party's rights were protected and that the case was heard on its merits.

---

[1]  The Court notes that, while default judgment was entered as to Landlord's claims against Ms. Milbourne, no motion was made to extinguish her claims against Landlord. However, at trial, Ms. Milbourne failed to present any evidence in support of her claims against Landlord. As such, her claims are considered waived.

[2]  The parties both initiated separate suits in the JP Court relating to their landlord-tenant relationship. *Douglas Milbourne v. Derrick J Swinton*, JP13-21-000714 (Feb. 11, 2021); *Derrick Swinton v. Douglas Milbourne and Orquidea Milbourne*, JP13-21-000770.(Feb. 16, 2021). The JP Court subsequently consolidated the cases, which created inconsistency with regards to who was the plaintiff(s) and who was the defendant(s) below—a distinction which matters on appeal, as a parties initial pleading obligations on appeal are dictated by their status as the plaintiff-below or the defendant-below. *See CCP Civ. R.* 72.3(b).

On September 30, 2024, the case proceeded to a trial *de novo*; three witnesses testified,[3] and 40 exhibits were entered into evidence.[4] At trial, the Court considered the following: (i) Landlord's claim against Tenant for failure to pay rent in the amount of $5,625; (ii) Landlord's breach of contract claim against Tenant regarding the hardwood floors in the amount of $1,610; (iii) Tenants' claim against Landlord for double their security deposit, totaling $4,500; (iv) Tenants' kitchen cleanup claim against Landlord for $6,000; and (v) damages as to Ms. Milbourne.

## FACTS

The Court found substantial issues with the credibility of each witness.[5] Their renditions of events were drenched in contradiction and riddled with frivolous mockery. As the finder of fact, the Court was charged with reconciling the inconsistencies in testimony, as reasonably as possible, so as to make one harmonious story out of it all.[6] This is that story:

---

[3]  The parties—Landlord and Tenants—were the only witnesses to testify at trial.

[4]  Plaintiff's Exhibits 1 through 24 and Defendant's Exhibits 1 through 16 were received into evidence, with the help of the Court. Both parties in this matter appeared *Pro Se*, the Court was mindful to this fact and afforded leeway "to allow the matter to be determined on its merits." *Jackson v. Unemployment Ins. Appeal Bd.*, 1986 WL 11546, at *2 (Del. Super Sept. 24, 1986).

[5]  *Tauber v. Rodriguez*, 2014 WL 12684743, at *4 (Del. Com. Pl. Aug. 8, 2014); *Pencader Associates, LLC v. Synergy Direct Mortg. Inc.*, 2010 WL 2681862, at *3 (Del. Super. June 30, 2010)("it is the Court's role to resolve the conflicts in witnesses' testimony and weigh their credibility").

[6]  *Mullin v. Ascetta*, 2021 WL 4272063, at *2 (Del. Super. Sept. 20, 2021); *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 546 (Del. Super. Feb. 4, 2005).

On January 20, 2020, the parties executed a rental lease agreement (the "Lease") pursuant to which Tenants agreed to rent the home owned by Landlord (the "Property") from February 15, 2020, through February 14, 2021, for a monthly rate of $2,250, plus a security deposit in the amount of $2,250. Tenants further agreed to paint the Property and "make minor cosmetic repairs including resurfacing and staining the hardwood floors."[7] In exchange, Tenants' rent was reduced by $500 for the first six months of their tenancy, for a total reduction of $3,000.

With the consent of Landlord, Tenants moved into the Property before the start of the Lease term to allow them advance opportunity to perform the painting and cosmetic repairs;[8] yet, even with the early move-in, Landlord had the Property professionally cleaned prior to their arrival. Save for the painting and cosmetic fixes described in the Lease, the Property was clean and prepped for painting at the time Tenants moved in.[9]

Although the Property was in a clean and habitable condition, various conventional maintenance needs arose in the initial months of Tenants' residency. Importantly, Landlord was not inattentive to Tenants' reported issues. For example, upon notice, Landlord took reasonable and appropriate steps to replace the

---

[7]  Def. Ex. 1
[8]  Neither party testified as to the exact date Tenants moved into the Property.
[9]  Throughout his testimony, Tenant invariably described the Property as being in disarray/disrepair and being beautiful. Photographs introduced into evidence by Tenant showed the Property as being clean and prepped for painting. Pl. Ex. 1, 2, 22.

4

dishwasher; fix the faucets in the main bathroom; remove a tree that appeared to be a safety hazard; and resurface the driveway with blacktop.

The routine maintenance inconveniences gave way to a more significant issue in November 2020, when the kitchen sink overflowed with grey water. Landlord promptly sent a plumber to the Property to address the issue. The plumber's invoice shows that he cleared a blockage and prescribed that an enzyme drain cleaner be used on a bi-monthly basis.[10] In all, the plumbing work cost $400, which was paid by Tenant directly; that payment was later offset by a $400 deduction in rent.

Unfortunately, that was not the last time grey water bubbled up at the Property; it happened again in January 2021. Landlord had the issue resolved by a professional, but Tenant again took on the task of cleaning up the grey water himself. Also, the cleanup involved use of chemical cleaners, the odors of which Tenants found to be highly offensive.

Notably, Tenants were not the only ones inconvenienced by home maintenance and repair-related issues. Despite agreeing to resurface and re-stain the hardwood floors—which, coupled with the painting of the walls, afforded Tenants a rent reduction of $3,000[11]—Tenants never executed the work. Consequently,

---

[10] Pl. Ex. 21. The invoice further notes that "water restoration" was needed to remedy the overflowed grey water, at an estimated cost of $3,000—but, the area had already been cleaned by the customer, Tenant. However, the invoice was admitted only for purposes of establishing that Tenant paid the plumber $400 directly; Tenant failed to present a witness to testify as to the content of the invoice and the meaning of "water restoration".

[11] Per the Lease, Tenants received a $500 rent reduction for a period of 6 months, totaling $3,000.

5

Landlord hired a flooring company to sand and stain the hardwood floors, for which he paid $1,610.

By the end of the Lease term, the relationship between Landlord and Tenants had become markedly acrimonious,[12] and Tenants stopped making their monthly rental payments as of January 15, 2021. Nevertheless, when the Lease ended on February 15, 2021, Tenants did not vacate the premises. Rather, they continued to live at the Property until March 30, 2021, attributing their 45-day delay in departure to a snowstorm. By the time Tenants vacated the Property, they owed back rent in the amount of $5,625.[13]

## DISCUSSION

In civil actions, the party asserting the claim must prove each element of the claim by a preponderance of the evidence.[14] The Delaware Supreme Court has described the preponderance of the evidence as "[t]he side on which the greater weight of the evidence is found."[15] It is "proof that something is more likely than

---

[12] Frustrated by the maintenance/repair-related issues and Landlord's handling of sdame, Tenants lodged a complaint with code enforcement authorities. February 1, 2021, Landlord received a letter from a code enforcement officer from New Castle County addressing a complaint filed by the Tenant in an attempt to incur housing violations upon the Residence. However, it is unclear what, if any, alleged violation was cited in this letter.

[13] The total of back rent owed represents Tenants last scheduled rental payment of $2,250, plus payment for the 45 days the continued to reside at the Property beyond the Lease term, at a prorated rate of $75/day.

[14] *Sullo v. Kousournas*, 2010 WL 718666, at *6 (Del. Super. Feb. 3, 2010).

[15] *Fletcher v. Shahan*, 2002 WL 499883 (Del. Super. March 6, 2002) (quoting *Barnett v. Division of Motor Vehicles*, 514 A.2d 1145, 1147 (Del.1986) (citations omitted)).

not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not."

All of the claims before the Court sound in contract. To prevail on a claim for breach of contract, the plaintiff must demonstrate, by a preponderance of the evidence, that: (1) a contract existed between the parties; (2) breach of an obligation imposed under the contract; and (3) damages resulting from that breach.[16]

The Court finds that the Lease was a binding contractual agreement between the parties.[17] Thus, in analyzing each parties' claims, the Court must consider whether breach of that contract occurred and, if so, whether damages were proven with reasonable certainty.[18]

### (i) Landlord's Unpaid Rent Claim

Landlord seeks compensation for the arrears of rent owed by Tenants. Notably, Tenants did not dispute that they were obligated to pay rent in the amount of $2,250 per month, nor do they dispute that such payments were not tendered for the final month of the Lease and the 45-days they remained beyond the Lease term. Therefore, the Court finds in favor of Landlord as to his claim for unpaid rent.

---

[16] *VLIW Techn., LLC v. Hewlett Packard Co.*, 840 A.2d 606, 612 (Del. 2012); *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005).

[17] In a stark display of the uncredible nature of his testimony, Tenant denied ever signing the Lease, only to moments later admit to the contrary.

[18] *Pharmathene, Inc. v. SIGA Tech., Inc.*, 2010 WL 4813553, at *11 (Del. Ch. Nov. 23, 2010).

Landlord is entitled to the unpaid rent for the period of January 15 to March 30, 2021, in the amount of $5,625.00.

### (ii) Landlord's Breach of Contract Claim Regarding the Hardwood Floors

As a condition of the Lease, the first six months of rent was to be reduced by $500 in exchange for Tenants completing, among other things, minor cosmetic repairs including resurfacing and staining the hardwood floors. Landlord claims that Tenants never performed nor paid for the floor alterations.

Pursuant to the Lease, it was incumbent upon Tenants to resurface and stain the floors. It is undisputed that the floors were resurfaced and stained by a licensed contractor paid for by Landlord. No evidence was presented that the Tenant ever paid more rent than that was required by the Lease to compensate for the failure to do the floors. Additionally, no argument was made in regard to striking the rent reduction as a result of the floor refinishing provision being unfulfilled. Thus, the Court finds that Tenant breached the conditions of the lease and Landlord is entitled to recover the damages resulting therefrom, i.e., the cost of staining and resurfacing the floors in the amount of $1,610.

### (iii) Tenant's Security Deposit Claim

The Lease provides, in Section IV, the Tenant shall pay the sum of $2,250 to the Landlord as a security deposit and Landlord will return the deposit "less any

amounts deducted."[19] Additionally, the Landlord will hold the deposit "pursuant to applicable laws or regulations."[20] Pursuant to 25 Del. C. § 5514(b):

> "Each security deposit shall be placed by the landlord in an escrow bank account in a federally-insured banking institution with an office that accepts deposits within the State. Such account shall be designated as a security deposit account and shall not be used in the operation of any business by the landlord."

During trial, Landlord admitted that the security deposit was not held in escrow, rather it was deposited into a personal PNC bank account. Additionally, Tenant introduced Landlord's answers to interrogatories, at trial, which show that Landlord admits to using the security deposit to pay the mortgage on the property. Thus, Landlord violated § 5514(b) by failing to hold the deposit in an escrow account.

Tenant argues that Landlord's mishandling of the deposit entitles him to double the security deposit under § 5514(b). However, § 5514(g)(1-2) provides double the security deposit as a penalty only when the landlord fails to remit the deposit within 20 days from the expiration of the agreement; or when landlord fails to disclose the location of the deposit within 20 days of a written request. Here, Landlord is not alleged to have failed to do either; rather, it is alleged that the deposit

---

[19] Def. Ex. 1 at 3.
[20] *Id.*

was held in a personal account and used to pay the mortgage. Under §5514(g)(2), there is no prescribed penalty for the violations alleged.

Therefore, based on the evidence presented, the Court finds that even though the Landlord violated the terms of the Lease and § 5514(b) the Tenant is not entitled to a remedy for the violations.

### (iv) Tenant's Kitchen Clean Up Claim

On two occasions—first in November 2020, and later in January 2021—the kitchen sink overflowed with grey water that poured into the kitchen. While it is undisputed Tenant cleaned up the grey water, evidence was not introduced to explain how to calculate the value of the cleanup cost. Nonetheless, Tenant argues the value of each cleanup is $3,000 per cleanup, for a total of $6,000.

In support of this claim, Tenant produced a photo of a computer screen that show a QuickBooks entry titled "Doug's Detail" (the "Entry"). The Entry provides a list of tasks/services and costs for each, specifically: "Odor Enhancement Deep Steam cleaning gun the gray out of Kitchen & Basement 10 Hr AT $150.00 & High Quality disinfected Spray Gun At $150.00 a Hr November $3000 & January $3000 11 Welwyn rd Newark de 19711." However, the entry was self-serving and unverifiable; the Entry was created by Tenant, and he offered no factual basis to support the self-generated cost figures. Therefore, the Court affords no weight to this evidence.

10

Based on the testimony and evidence presented at trial, the value of the water cleanup cannot be determined with reasonable certainty. As such, Tenant failed to satisfy his burden of proving damages by the preponderance of the evidence.[21]

### (v) Damages as to Ms. Milbourne

By Order dated May 24, 2024, the Court entered default judgment as to Ms. Milbourne, with damages to be determined at trial. As described above, the Court is satisfied that Landlord proved, by a preponderance of the evidence, that he suffered damages of $5,625.00 for unpaid rent, and $1,610 for the resurfacing and staining of the floor, for a total of $7,235.

## CONCLUSION

For the foregoing reasons, **judgement is hereby entered in favor of Derrick Swinton and against Douglas Milbourne and Orquidea Milbourne in the amount of $7,235.**

**IT IS SO ORDERED.**

_____
Robert H. Surles,
Judge

---

[21] *Sullo v. Kousournas*, 2010 WL 718666, at *6 (Del. Super. Feb. 3, 2010).

11